```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

UNITED STATES OF AMERICA

v.                              CRIMINAL ACTION NO. 2:19-00077

RYAN SCOTT KIBBLE

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant's "Emergency Motion for Compassionate Release". (ECF No. 73.) Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), defendant requests compassionate release due to his "pre-existing medical conditions which place him at 'high risk' of developing severe complications or death" should he contract the the COVID-19 virus. Id. Defendant's motion has been fully briefed and is ripe for decision.

I.

On August 12, 2019, Kibble pled guilty to one count of traveling in interstate commerce for the purpose of engaging in illicit sexual contact with another person, in violation of 18 U.S.C. §§ 2423(b) and (e). On January 14, 2020, Kibble was sentenced to a term of imprisonment of 57 months to be followed by a term of supervised release of fifteen years. On February 14, 2020, defendant reported to FCI Elkton in Lisbon, Ohio, to begin serving his sentence. He is currently housed at FCI Elkton

and, according to the Bureau of Prisons' website, his current projected release date is January 30, 2024.

Kibble is 34 years old and was born with a serious heart condition. Up until he was incarcerated, Kibble was seen by a cardiologist who has indicated that patients with "complex congenital heart disease carry an increased risk if exposed to the COVID-19 virus." Exhibit B to ECF No. 73. Kibble has also been diagnosed with non-alcohol related cirrhosis of the liver.

In mid-April of 2020, defendant submitted a written request for compassionate release to the attention of the Warden at FCI Elkton. On April 27, 2020, Kibble's request for compassionate release was denied. See Exhibit A to ECF No. 73.

The instant motion was filed on May 15, 2020. The government filed its opposition to defendant's motion on May 20, 2020, and Kibble filed a reply on May 27, 2020.

After briefing was complete, on June 15, 2020, defendant filed a supplemental memorandum in support of his motion for compassionate release. See ECF No. 76. Attached to that supplemental memorandum was a memorandum opinion and order, dated June 12, 2020, from another judge of this court granting the motion for compassionate release of Ralph White, another inmate at FCI Elkton. See Exhibit A to ECF No. 76. Kibble urges the

court to follow that decision and grant his motion for compassionate release.  Kibble also noted "that he had been tested for COVID-19 and was subsequently moved to another unit where he was in quarantine status.  Mr. Kibble has not been told that he has contracted the virus, but suspects that he did test positive and is asymptomatic."  ECF No. 76 at 3.  Kibble further noted staff at FCI Elkton were not wearing masks.  See id.

In its response to the supplemental memorandum, the government confirmed that Kibble had been tested for COVID-19 on May 20, 2020, and the results were reported positive on May 24, 2020.  According to the government, Kibble's motion for compassionate release sought release to avoid becoming infected with COVID-19 and, given that he has already contracted the virus, his motion should be denied as moot.

On June 18, 2020, Kibble filed a reply to the government's memorandum.[1]  See ECF No. 78.  He argues that his motion is not moot despite his May 24, 2020, positive test for COVID-19.  See id. at 1.  According to Kibble's filing, he only found out he was positive for COVID-19 on June 17, 2020, after a phone call from counsel.  See id.  Kibble noted "that he is still being housed in

---

[1] Both motions to seal, ECF Nos. 77 and 79, which seek to protect confidential medical information, are **GRANTED**.  To the extent this Memorandum Opinion and Order discusses medical information, the court has only mentioned information that is otherwise available in the public filings.

the same unit where other inmates are visibly ill from the COVID-19 virus" but that he "continue[d] to be quarantined from the remainder of the inmate population at FCI Elkton." Id. Kibble maintains that although he "has not yet developed a fever or a hacking cough, his prolonged presence from being housed in the same dormitory unit with other asymptomatic as well as bedridden inmates can still result in Mr. Kibble subsequently developing significant complications from the virus." Id.

## II.

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the court may reduce a term of imprisonment previously imposed if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

The First Step Act empowers criminal defendants to request that courts grant them compassionate release pursuant to 18 U.S.C § 3582(c). But before they make such requests to the court, defendants must first ask BOP via the administrative process and give BOP thirty days to respond. See id. § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after either BOP denies the request or thirty days has elapsed since the request was filed), a court "may reduce the term of imprisonment." Id. §

3582(c)(1)(A)(i). Here, Kibble filed a written request for compassionate release with the BOP which was denied on April 27, 2020. See ECF No. 73 Ex. A. Thus, defendant has exhausted his remedies and the court may consider his motion on the merits.

Congress has restricted the power of courts to modify a term of imprisonment once it has been imposed except when "extraordinary and compelling reasons warrant such a reduction" and when "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Thus, to warrant compassionate release, defendant must show that: (1) extraordinary and compelling reasons warrant a sentence reduction; (2) he is not a danger to the safety of others or the community; and (3) the reduction satisfies the sentencing factors in 18 U.S.C. § 3553(a). See id.; see also USSG §§1B1.13(1)(A),(2). It is worth emphasizing that compassionate release is "an extraordinary and rare event." United States v. Mangarella, 2020 WL 1291835, *2-3 (W.D.N.C. Mar. 16, 2020).

    A.    **Extraordinary and Compelling Reasons**

Other district courts, in considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, have considered the age of the prisoner, the severity

and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility.  United States v. Brady, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (citing and gathering cases).  Thus, compassionate release motions amid the COVID-19 pandemic require a "fact-intensive" inquiry.  See United States v. Shakur, 2020 WL 1911224, at *1 (S.D.N.Y. Apr. 20, 2020).

According to the Centers for Disease Control and Prevention ("CDC"), persons with "serious underlying medical conditions" have a significantly increased the risk of health complications from COVID-19.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 23, 2020).  Both "serious heart conditions" and "liver disease" are listed as two conditions that make a person of any age at higher risk for serious illness from COVID-19.  Id. Accordingly, defendant – due to his preexisting medical conditions - is at a higher risk of health problems resulting from COVID-19.  Moreover, defendant can show a particularized risk of contracting the disease, as FCI Elkton is suffering from a significant outbreak of COVID-19.  See United States v. Jackson, 2020 WL 3396901, *2 (N.D. Ind. June 19, 2020) ("FCI Elkton has been one of the hardest hit institutions in the

6

country. As of the date of the evidentiary hearing on this motion, out of approximately 2500 inmates at Elkton, 438 had tested positive for COVID-19. That's roughly 25% of the entire prison population."). Indeed, defendant has already contracted COVID-19 although he appears to have remained asymptomatic for more than 4 weeks. Nevertheless, the court finds there are "extraordinary and compelling reasons" within the meaning of 18 U.S.C. § 3582(c)(1)(A) to support a reduced sentence or early release.

    **B.    Danger to the Safety of Others**

The court cannot find that a sentence reduction for defendant would not result in danger to the safety of others or the community. In this case, defendant, armed with condoms, crossed state lines for the express purpose of having sex with a fourteen-year-old girl, in violation of 18 U.S.C. § 2423(b). This is a crime of violence. See 18 U.S.C. § 3156(a)(4)(C); see also United States v. Breeden, 2015 WL 13310427, *7 (D.D.C. Nov. 16, 2015) (noting that Congress designated a violation of § 2423(b) to be a crime of violence). The court recognizes that this was defendant's first offense and that a real minor was not involved. The court cannot, however, ignore the dangerous nature of defendant's conduct nor is it assured that defendant would not

present a danger to other minors if released from prison. See United States v. Schultz, 2020 WL 2764193, *8 (W.D.N.Y. May 28, 2020) (denying motion for compassionate release where, among other reasons, defendant "poses a danger to the community given his criminal conduct in soliciting, grooming, and arranging to meet a minor for sex").

    **C.    Section 3553(a) Sentencing Factors**

Even if the court were to conclude that defendant is not a danger to the community or to the safety of other, the factors set forth in 18 U.S.C. § 3553(a) compel the denial of defendant's motion. These factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to

provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

Applying these factors to defendant, the court finds that granting defendant's motion for compassionate release would be inconsistent with the sentencing factors set forth in § 3553(a). While defendant has no prior criminal record, his offense was violent. Based on the seriousness of defendant's crime, and the need to promote respect for the law, to provide just punishment for the offense, to adequately deter criminal conduct, and to avoid unwanted sentencing disparities, the court sentenced defendant to 57 months of incarceration. Given these particular circumstances, the court finds it very significant that defendant has served less than a tenth of his sentence. Thus, the court finds that a sentence reduction of approximately 90 percent would be entirely inconsistent with the sentencing factors set forth in § 3553(a).

The vast majority of district courts have likewise declined to grant compassionate release motions where a defendant has served a small fraction of his or her sentence of incarceration. See United States v. Lonich, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motion despite COVID-19 outbreaks in the facility and defendant being 65 years old and having medical

conditions that make him particularly vulnerable, because "the Court finds it significant that defendant[] ha[s] served far less than half of [his] sentence[]"); United States v. Pawlowski, 2020 WL 2526523, *7 (E.D. Pa. May 18, 2020) (denying motion for compassionate release where defendant had "served only a small fraction of his sentence to date"); United States v. Brady, 2020 WL 2512100, at *4 (S.D.N.Y. May 15, 2020) (finding that despite defendant having serious medical conditions "[t]he deterrence objectives of 18 U.S.C. § 3553(a) would be undercut by a reduction here, where [defendant] has served . . . less than one quarter" of his sentence); United States v. Bogdanoff, 2020 WL 2307315, *6 (E.D. Pa. May 8, 2020) (noting that defendant who had served only seven years of 18-year sentence had a "much different" case for compassionate release than "others where defendants are at the end of their sentence"); United States v. Hylander, 2020 WL 1915950, at *2 (S.D. Fla. Apr. 20, 2020) (denying compassionate release where 66-year-old defendant had served one-third of sentence and suffered from a number of significant health conditions).[2]

---

[2] See also United States v. Arthur Williams, 2020 WL 3086049, at *1 (D. Mass. June 10, 2020) (denying in part because defendant had served less than half of his sentence); United States v. Brinkley, 2020 WL 3051574, at *1 (S.D. Fla. June 7, 2020) ("Although [chronic bronchitis] may put him at a higher risk of contracting the a severe case of Covid-19, Brinkley's asthma is not at such an acute level as to warrant his release after

The court is very concerned about the spread of COVID-19 in the federal prison system, and especially about the outbreak at FCI Elkton. However, while defendant's medical conditions place him at higher risk of complications if infected with the virus, the court cannot ignore that defendant has already contracted the virus and has not suffered serious complications. See United States v. Reynolds, 2020 WL 3266532, *4 (W.D. Wash. June 17, 2020) ("The fact that Mr. Reynolds tested positive for COVID-19 with a `resolved' diagnosis significantly alters the analysis of

---

serving less than 50% of his sentence"); United States v. Colonna, 2020 WL 2839172, at *4 (S.D. Fla. June 1, 2020) (holding that a modification of defendant's sentence is unwarranted in part because defendant had served less than 25% of the sentence); United States v. Linder, 2020 WL 2793089, at *4 (W.D. Pa. May 29, 2020) (same); United States v. Singui, 2020 WL 2523114, at *5 (C.D. Cal. May 18, 2020) (same); United States v. Alvarez, 2020 WL 2572519, at *5 (S.D. Fla. May 21, 2020) (assuming defendant had satisfied exhaustion requirement, court would still deny compassionate release on § 3553(a) grounds because defendant had served less than 25% of his sentence); United States v. Zamor, 2020 WL 2764282, at *2 (S.D. Fla. May 12, 2020) ("Crucially, [the defendant] has completed less than 40% of this sentence, and the applicable 18 U.S.C. § 3553(a) factors . . . do not warrant [his] release after serving less than half of his sentence"); United States v. Gamble, 2020 WL 1955338, at *4 (D. Conn. Apr. 23, 2020) (denying compassionate release where 47-year-old defendant had served five months of 92-month sentence and suffered from diabetes); United States v. Moskop, 2020 WL 1862636, at *1 (S.D. Ill. Apr. 14, 2020) (denying compassionate release where 72-year-old defendant had served less than half of 240-month sentence and suffered from various significant risk-increasing medical conditions); United States v. Haney, 2020 WL 1821988, at *7 (S.D.N.Y. Apr. 13, 2020) (denying compassionate release for a 61-year-old prisoner whose release would reduce a 42-month sentence to nine months).

his petition for compassionate release. His last medical report indicates that he is currently receiving medication for his other health concerns and is not suffering from any reported lingering symptoms from COVID-19. Consequently, his circumstances do not provide a basis to reduce his sentence or grant his request for compassionate release."). The § 3553 factors are dispositive in this case-especially the very small amount of time that defendant has served for his crime. An approximate 90 percent reduction in sentence would not reflect the seriousness of the offense, provide just punishment, be a sufficient deterrent to others in the community, and would result in unwarranted sentencing disparities. See 18 U.S.C. § 3553(a); see also United States v. Oropeza Lopez, 2020 WL 1923194, at *2 (E.D. Cal. Apr. 21, 2020) ("Defendant has served less than half of his sentence [which] . . . would not appear to "reflect the seriousness of the offense" or "provide just punishment for the offense."); United States v. Edington, 2020 WL 2744140, at *5 (D. Colo. May 27, 2020) (concluding that, even if the court were to find the defendant was not a danger to the community, a "sentence of less than half the court originally imposed is [not] sufficient to further the goals of sentencing"). A sentence of 57 months imprisonment was necessary to achieve those goals and a reduction of the magnitude

that defendant seeks runs counter to those objectives. Even converting defendant's sentence to one of home confinement, when he has served little more than 4 months of a 57-month term of incarceration, would disserve these important § 3553(a) factors.

III.

Having considered the entire record in this matter, including the parties' filings related to the instant motion, the court concludes that a sentence reduction would not serve the sentencing objectives of 18 U.S.C. § 3553(a). Therefore, the court **DENIES** Kibble's motion for compassionate release.

The Clerk is directed to send a copy of this Order to counsel of record, any unrepresented parties, and the Probation Office of this court.

It is SO ORDERED this 25th day of June, 2020.

ENTER:

*David A. Faber*
David A. Faber
Senior United States District Judge